**TRENK ISABEL SIDDIQI**
 **& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@tisslaw.com
Email: rroglieri@tisslaw.com

*Proposed Counsel to Fortress Holdings, LLC,*
*Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| FORTRESS HOLDINGS, LLC, | Case No. 25-10977 (___) |
| Debtor. | |

**DECLARATION OF PAUL QASSIS CONCERNING THE CHAPTER 11 FILING AND REORGANIZATION OF FORTRESS HOLDING, LLC**

**PAUL QASSIS,** of full age, pursuant to 28 U.S.C. § 1746, hereby certifies and declares as follows:

1. I am a manager and fifty (50%) percent owner of Fortress Holdings, LLC ("**Fortress**"), the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case. I am fully familiar with the business and affairs of Fortress, including the facts and circumstances set forth herein.

2. I submit this declaration (the "**Declaration**") in support of Fortress's voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and the relief that Fortress has requested from the Court in various motions and applications filed contemporaneously herewith (the "**First-Day Pleadings**"). The relief sought in each of the First-

Day Pleadings: (1) is necessary to enable Fortress to operate in Chapter 11 with minimal disruption to its operations without loss of value; and (2) best serves the interests of Fortress's estate, creditors, and other parties in interest.

3. Except as otherwise indicated, the facts set forth in this Declaration are based on my personal knowledge, information supplied to me by other members of Fortress's management or its professionals, information learned from my review of relevant documents, or my opinion based upon my experience and knowledge of Fortress's operations and financial condition. This Declaration is intended to provide a brief background of Fortress, a description of Fortress and its services, the reasons for Fortress's chapter 11 filing, Fortress's objectives in the chapter 11 process, and a summary of the relief sought in each of the First-Day Pleadings.

4. If called as a witness in Fortress's Chapter 11 proceedings, I would testify to the best of my knowledge competently to the facts set forth in this Declaration. Unless otherwise indicated, all financial information set forth in this Declaration is presented on an unaudited basis.

**Personal Background**

5. I have a Bachelor of Science in Electrical Engineering in 1992 and a Masters of Science in Biomedical Engineering with a Minor in Computer Programming from New Jersey Institute of Technology in 1994. I also successfully attended a MBA Executive Program from Wharton College of Business.

6. I emigrated from Lebanon in 1985 and graduated from Clifton High School in 1985.

7. I became a full United States Citizen in 1989.

8. From January 1993 through August 1998, I worked for Johnson & Johnson in Flemington, New Jersey and Cordis in Warren, New Jersey.

9. From 1998 until 2007, I worked for the New York Stock Exchange as Director of Regulatory Systems. I assisted in the design of the first web-based stock application on the

Internet. After 9/11, I helped automate fingerprinting processes to further safeguard financial systems. From 2007 through 2010, I worked for the Financial Industry Regulatory Authority (FINRA).

10. From 2010 until 2019, I was involved in medical consulting for Life Cell, MTF and other entities which were involved in skin and bone marrow processes for cancer patients.

11. In 2010, I began various real estate efforts including providing contracting services for Valley National Bank when it acquired real estate through foreclosures or workouts. I bought, renovated and sold residential homes.

12. In 2013, I acquired 555 Preakness Avenue, Totowa, New Jersey ("**555 Preakness**") from Valley National Bank. Majid Krikor and I paid $1.1 million for the property and operated it initially as a 20,000 square foot office building. Since obtaining final land use approvals, millions of dollars and substantial improvements have expanded the Project to its current 80,000 7-story footprint. Later, I purchased three additional lots which are adjacent to 555 Preakness Avenue.

13. I have over twenty (20) years' experience in the catering business having formerly operated a similar business in Carlstadt, New Jersey beginning in 2010. That business closed its doors in 2017 as a result of a devastating fire. Because it was totally destroyed, the Township felt that the area was more consistent with a residential use.

14. Annexed hereto as **Exhibit A** is my most recent resume which reflects my substantial business and other experience throughout the New York/New Jersey metropolitan area.

## BACKGROUND OF THE DEBTOR

15. Fortress owns the real property located at: (i) 555 Preakness Avenue, Totowa, New Jersey (Lot 2, Block 6); (ii) 561 Preakness Avenue, Totowa, New Jersey (Lot 4, Block 6) ("**561**

**Preakness**"); and (iii) 322 - 324 Berkshire Avenue, Paterson, New Jersey (the "**Berkshire**"), which make up the restaurant and catering facility (the "**Project**").

16. The Project, which started as a single property with a 20,000 square foot office building has been substantially improved by the Debtor and now consists of a catering and restaurant facility, which is fully constructed and nearly ready for operations. The Project consists of approximately 80,000 square feet over seven (7) floors with spectacular views of New York City. The project has a full Kosher kitchen and roof top restaurant. The Project is named The Chariot. Pictures of the current Project are annexed hereto as **Exhibit B**.

17. I have invested and loaned a total in excess of $14.275 million into the Project.

18. As set forth below, Fortress borrowed $11 million from Bogota Savings Bank ("**BSB**") which were, amongst other things, used to fund portions of the construction of the Project. This is a fraction of the monies which have substantially improved the Project and value of the collateral.

19. Balcony Holdings, LLC ("**Balcony**"), an entity separate from the Debtor, owns a Plenary Retail Consumption Liquor License, which will be used to operate the Project. Balcony is wholly-owned by Paul Qassis.

## THE DEBTOR'S MANAGEMENT

20. I hold 50% of the membership interests in Fortress and Majid Krikor holds the remaining 50%. We are both managers and members of Fortress. I handle all of the day-to-day operations of the company. Mr. Krikor has invested approximately $5 million into the Project.

4

## THE DEBTOR'S ASSETS

21. The Debtor's main assets are its real property – 555 Preakness, 561 Preakness and Berkshire – which form the Project. Annexed hereto as **Exhibit C** is a recent appraisal by Mid-Atlantic Appraisal, Inc. dated October 1, 2024 valuing the Project at $42 million.

22. BSB obtained an appraisal dated April 6, 2023 by Cushman & Wakefield with a As Is Market Value in the amount of $28 million. *See* **Exhibit D** annexed hereto.

23. Fortress also owns a vacant lot contiguous to the Project located at 381 Linwood Avenue, Paterson, New Jersey, which is not included in the appraisal.

## CIRCUMSTANCES LEADING TO BANKRUPTCY

24. As set forth in more detail below, BSB holds a note and mortgage dated August 11, 2021. This loan was specified to be a construction loan that would ultimately convert to a 5-year permanent loan upon completion of the Project. The loan contained an interest reserve of over $700,000 but the initial interest rate was Prime plus 1.625 percent and has escalated substantially as rates spiked.

25. On January 27, 2025, Fortress and its professionals met with representatives of the Borough of Totowa and other officials in order to get a final list to obtain a temporary certificate of occupancy so that Fortress may begin the process of opening for business.

26. When opened, Fortress will be the premiere catering restaurant and catering facility. The Project will handle weddings and other galas in excess of 600 people with parking for 200 vehicles. All final land use approvals were obtained in 2020 after years of development.

27. Fortress is fully committed to bringing the Project to fruition and is confident that it can and will be open by the third quarter of 2025.

28. The Chapter 11 filing is necessary and appropriate because BSB has demanded immediate repayment of its loan and began Foreclosure and Law Division Actions which are

affecting Fortress's ability to finalize the project and begin generating earnings to repay the loan and refinance the loan to a permanent loan facility. Bogota demanded that the Project be listed for sale.

## CAPITAL STRUCTURE

### A. Bogota Savings Bank

29. The Debtor's primary secured debt is held by BSB, which is significantly oversecured.

30. On August 11, 2021, Fortress and BSB entered into a Mortgage Note (the "**Note**") in the principal amount of $11,000,000. *See* **Exhibit E** annexed hereto. Per the Note, the Note was advanced as follows:

   a. $4,250,000 was used to pay off an existing commercial mortgage loan with BSB;

   b. $5,630,000 was used for hard costs associated with construction;

   c. $730,000 was escrowed for an interest reserve; and

   d. $390,000 was used for contingency.

*Id.*

31. In connection with the Note, Fortress and BSB entered into a Security Agreement (the "**Security Agreement**"). *See* **Exhibit F** annexed hereto. The Security Agreement provides for a security interest in all of the following:

   a. 555 Preakness;

   b. 561 Preakness;

   c. Berkshire (collectively with 555 Preakness, 561 Preakness and Berkshire shall be referred to as the "**Real Property Collateral**"); and

    d.    Fortress's inventory, chattel paper, deposit accounts, accounts, equipment and general intangibles. It also includes, amongst other things, the proceeds therefrom (collectively with the Real Property Collateral, the "**BSB Collateral**").

*Id.*

32.    The Debtor also entered into an Absolute Assignment of Leases and Rents. *See* **Exhibit G** annexed hereto.

33.    In addition to the collateral set forth above and in connection with the Note, Paul Qassis and Majid Krikor executed a Guaranty (collectively, the "**Guarantees**"). *See* **Exhibit H** annexed hereto.

34.    The Note provides for a variable interest at the initial rate of 4.875% per year with monthly installments of interest beginning September 1, 2021 and terminating March 1, 2023, at which time the entire loan balance became due and payable. *See* Exh. E.

35.    On April 18, 2024, BSB filed a complaint commencing the action captioned <u>Bogota Savings Bank v. Fortress Holdings, LLC, et al.</u> in the Superior Court of New Jersey, Passaic Vicinage, Chancery Division (the "**Foreclosure Action**"). *See* **Exhibit I** annexed hereto. The Foreclosure Action seeks to foreclose on the Real Property Collateral. *Id.*

36.    On April 18, 2024, BSB also filed a separate action seeking judgment on the Note in <u>Bogota Savings Bank v. Fortress Holdings, LLC, et al.</u> in the Superior Court of New Jersey, Passaic Vicinage, Civil Division.

37.    BSB asserted in its Motion for Final Judgment filed in the Foreclosure Action that the outstanding amount due as of December 1, 2024 was $15,754,206.42. The Debtor disputes this amount.

B. **Small Business Administration**

38. On June 29, 2020, the U.S. Small Business Administration filed a UCC against the debtor asserting a security interest in:

> All tangible and intangible personal property, including, but not limited to : (a) inventory, (b) equipment, (c) instruments, including promissory notes, (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code.

*See* **Exhibit J** annexed hereto.

39. The Debtor believes the loan amount is approximately $70,000.

## THE DEBTOR'S CHAPTER 11 FILING

40. Fortress filed a voluntary Chapter 11 petition on January 30, 2025 (the "**Petition Date**").  Fortress intends to continue operating its business and proposes to use its cash and future revenues in accordance with the debtor-in-possession operating budget, which is annexed to the cash collateral motion as Exhibit A.  Fortress will also be seeking to obtain approved debtor in possession financing.

41. The Debtor's assets are fully insured.  *See* **Exhibit K** annexed hereto.

## REORGANIZATION PURPOSE

42. Fortress intends to continue operating its business in the ordinary course and needs the breathing room provided by the Bankruptcy Code in order to continue to operate effectively. The goal is to maximize the value of Fortress's assets by finishing construction on the Project and successfully opening the restaurant and catering facility.  Fortress believes that it has a viable business.

43. We look forward to working with all creditor constituencies and the Court in order to quickly present a plan of organization for consideration.

## FIRST DAY MOTIONS

44. Concurrently with the filing of its chapter 11 petition, Fortress has filed certain motions and proposed Orders (collectively, the "**First-Day Orders**"). Fortress requests this Court enter each of the First-Day Orders described below, as each is critical to Fortress achieving a successful result in its chapter 11 case for the benefit of all parties in interest.

### A. Motion for an Order Authorizing the Interim and Final Use of Cash Collateral

45. Fortress seeks entry of an order authorizing the interim and final use of Cash Collateral and submits further that Fortress's secured creditor (BSB) will not be harmed by the use of the Cash Collateral because BSB is significantly oversecured and adequately protected. Cash Collateral will be used solely in accordance with the budget annexed to the motion.

46. Use of cash collateral is imperative as BSB has a blanket lien on Fortress's inventory, deposit accounts and other assets. Without the use of cash, Fortress will be unable to fund essential payments, including payroll.

### B. Motion for an Interim Order and a Final Order (i) Prohibiting Utility Companies From Discontinuing, Altering, or Refusing Service; (ii) Deeming Utility Companies to Have Adequate Assurance of Payment; and (iii) Establishing Procedures for Resolving Requests for Additional Assurance Pursuant to 11 U.S.C. §§ 105(a) and 366

47. Fortress seeks entry of (i) an Interim Order, and (ii) a Final Order, pursuant to sections 105(a) and 366 of the Bankruptcy Code, (a) prohibiting the utility companies from discontinuing, altering or refusing service to Fortress, except as set forth herein, (b) deeming the utility companies adequately assured of future performance on the basis of payment of a two-week security deposit, and (c) establishing procedures for resolving requests for additional assurance of payment.

48. Uninterrupted utility services are essential to Fortress's ongoing operations and, therefore, to the success of Fortress's chapter 11 efforts. Indeed, any disruption to Fortress's businesses by virtue of the cessation of utility services by the utility companies will bring Fortress's operations to a halt.

49. In accordance with Bankruptcy Code section 366(c)(1)(A), Fortress proposes to provide additional assurance of payment to each utility company. Specifically, Fortress proposes to issue a security deposit as set forth in the motion.

C. **Motion for Authority to Continue to Use Existing Bank Accounts and Business Forms Pursuant to 11 U.S.C. §§ 105(a) and 363(c)**

50. Currently, Fortress has a bank account with Bank of America (the "**Bank Account**"). In the ordinary course of its operations, Fortress receives deposits and issues checks, wire transfers and ACH transfers into and out of its Bank Accounts.

51. Fortress also seeks authority to continue to use their prepetition business forms including, but not limited to, letterhead, invoices, checks, *et cetera* (collectively, the "**Business Forms**"), without reference to their status as debtors-in-possession. Requiring Fortress to immediately print new Business Forms would be burdensome, expensive, and disruptive. Fortress will, however, either print or stamp "Debtor-in-Possession" on their checks, and when they replace stock, will obtain checks marked "Debtor-in-Possession."

10

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

                                                               */s/ Paul Qassis*
                                                               **PAUL QASSIS**

Dated: January 30, 2025

4921-9280-5652, v. 2