**TRENK ISABEL SIDDIQI**
 **& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@tisslaw.com
Email: rroglieri@tisslaw.com

*Proposed Counsel to Fortress Holdings, LLC,*
*Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: <br><br> FORTRESS HOLDINGS, LLC, <br><br> Debtor. | Chapter 11 <br><br> Case No. 25-10977 (___) |

**DEBTOR'S BRIEF IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), FED. R. BANKR. P. 4001(b), AND D.N.J. L.B.R. 4001-4 FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

TO:   THE HONORABLE JUDGES OF THE
       UNITED STATES BANKRUPTCY COURT

Fortress Holdings, LLC, Chapter 11 debtor and debtor-in-possession (the "**Debtor**"), by and through its proposed counsel, Trenk Isabel Siddiqi & Shahdanian P.C., hereby moves (the "**Motion**") before this Court for interim and final orders authorizing the Debtor to use cash collateral pursuant to sections 105, 363(c)(2)(B), 363(e), and 507(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-4 of the District of New Jersey's Local Bankruptcy Rules

(the "**Local Bankruptcy Rules**").  In support of the Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A. The Debtor's Bankruptcy**

3. The Debtor filed its voluntary chapter 11 petition on January 30, 2025 (the "**Petition Date**").

4. The Debtor continues to operate its business and manage its affairs as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. As of the filing of this Motion, no trustee, examiner or creditors' committee has been appointed in this case.

5. Upon opening, the Debtor will be a premier catering and restaurant facility located in Totowa, New Jersey.  The space will be used for weddings and other events with spectacular views of New York City and will hold in excess of 600 people.  The facilities will contain seven floors and include a Kosher kitchen and roof top restaurant.  The Debtor is a limited liability company organized under the laws of the State of New Jersey.

6. A more detailed history and description of the Debtor and its operations, together with the reasons for its chapter 11 filing, are set forth in the First Day Declaration of Paul Qassis [ECF 2] ("**Qassis Declaration**"), which is incorporated herein as if set forth in its entirety.

B. **Secured Creditors**[1]

    i.   ***Bogota Savings Bank***

7. The Debtor's primary secured debt is held by Bogota Savings Bank ("**BSB**"), which is significantly oversecured.

8. On August 11, 2021, the Debtor and BSB entered into a Mortgage Note (the "**Note**") in the principal amount of $11,000,000. Qassis Declaration, Exh. E. Per the Note, the Note was advanced as follows:

    a. $4,250,000 was used to pay off an existing commercial mortgage loan with BSB;

    b. $5,630,000 was used for hard costs associated with construction;

    c. $730,000 was escrowed for an interest reserve; and

    d. $390,000 was used for contingency.

*Id.*

9. In connection with the Note, the Debtor and BDB entered into a Security Agreement (the "**Security Agreement**"). Qassis Declaration, Exh. F. The Security Agreement provides for a security interest in all of the following:

    a. The real property located at 555 Preakness Avenue, Totowa, NJ ("**555 Preakness**");

    b. The real property located at 561 Preakness Avenue, Totowa, NJ ("**561 Preakness**");

---

[1] Nothing in this Motion shall prejudice the Debtor's right to dispute the amount, priority or secured status of any claim set forth herein.

3

    c. The real property located at 322-324 Berkshire Avenue, Paterson, NJ ("**Berkshire**" and collectively with 55 Preakness and 561 Preakness, the "**Real Property Collateral**"); and

    d. The Debtor's inventory, chattel paper, deposit accounts, accounts, equipment and general intangibles. It also includes, amongst other things, the proceeds therefrom (collectively with the Real Property Collateral, the "**BSB Collateral**").

*Id.*

  10. The Debtor also entered into an Absolute Assignment of Leases and Rents. Qassis Declaration, Exh. G.

  11. In addition to the collateral set forth above and in connection with the Note, Paul Qassis and Majid Krikor executed a Guaranty (collectively, the "**Guarantees**"). Qassis Declaration, Exh. H.

  12. The Note provides for a variable interest at the initial rate of 4.875% per year with monthly installments of interest beginning September 1, 2021 and terminating March 1, 2023, at which time the entire loan balance became due and payable. *See* Exh. E.

  13. On April 18, 2024, BSB filed a complaint commencing the action captioned *Bogota Savings Bank v. Fortress Holdings, LLC, et al.* in the Superior Court of New Jersey, Passaic Vicinage, Chancery Division (the "**Foreclosure Action**"). Qassis Declaration, Exh. I. The Foreclosure Action seeks to foreclose on the Real Property Collateral. *Id.*

  14. On April 18, 2024, BSB also filed a separate action seeking judgment on the Note in Bogota Savings Bank v. Fortress Holdings, LLC, et al. in the Superior Court of New Jersey, Passaic Vicinage, Civil Division.

15. BSB asserted in its Motion for Final Judgment filed in the Foreclosure action that the outstanding amount due as of December 1, 2024 was $15,754,206.42. The Debtor disputes this amount.

### ii. *Small Business Administration*

16. On June 29, 2020, the U.S. Small Business Administration filed a UCC against the debtor asserting a security interest in:

> All tangible and intangible personal property, including, but not limited to : (a) inventory, (b) equipment, (c) instruments, including promissory notes, (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code.

*See* Qassis Declaration, Exh. J.

17. The Debtor believes that the loan amount is approximately $70,000.

### C. **The Collateral**

18. The Real Property Collateral has significant value and the BSB Loan is significantly oversecured. A recent appraisal by Mid-Atlantic Appraisal, Inc. dated October 1, 2024 valuing the Real Property Collateral at $42 million. Qassid Declaration, Exh. C.

19. Separately, BSB obtained an appraisal dated April 6, 2023 by Cushman & Wakefield with a As Is Market Value in the amount of $28 million. Qassid Declaration, Exh. D.

### **RELIEF REQUESTED AND BASIS THEREFOR**

24. By this Motion, the Debtor seeks the preliminary and final use of cash collateral to preserve its assets so as to maintain and maximize its value for the benefit of all parties-in-interest. Simultaneously submitted herewith is the proposed interim order.

5

25. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents . . . and the proceeds thereof." 11 U.S.C. § 363(a).

26. By operation of section 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001(b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until the Court authorizes the use of cash collateral after notice and a hearing and upon a finding that the interest of the secured party is adequately protected.

27. Although "adequate protection" is not defined in the Bankruptcy Code, courts generally describe it as "a balancing of the debtor's and a creditor's respective harm," *see In re Carson*, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted), and the legislative history of section 361 of the Bankruptcy Code reflects congressional intent to give courts flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. *In re 5-Leaf Cover Corp.*, 6 B.R. 463, 466 (Bankr. S.D. W. Va. 1980).

28. In addition, section 361 of the Bankruptcy Code sets forth the following three (3) non-exclusive[2] adequate protection methods:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a

---

[2] The adequate protection mechanisms enumerated by Bankruptcy Code section 361 are not exhaustive. *See In re Miller*, 734 F.2d 1396 (9th Cir. 1984); *In re Family Place P'ship*, 95 B.R. 166 (Bankr. E.D. Cal. 1989).

4907-1766-3252, v. 1

>   decrease in the value of such entity's interest in such property; or
>
>   (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

29. The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. *In re Shriver*, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); *In re South Village, Inc.*, 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. *In re Ramco Well Service, Inc.*, 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983). Therefore, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. *Id.*; *accord In re Price*, 40 B.R. 578, 580 (Bankr. N.C. Tex. 1984).

30. Furthermore, courts have held that the existence of an equity cushion can also provide adequate protection. *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Col. 1995) (oversecured creditors may not be entitled to cash payments or post-petition liens because they are adequately protected through the existence of a value cushion).

31. In the present matter, BSB will be adequately protected during the pendency of the Debtor's bankruptcy case. First, BSB has sufficient collateral that significantly exceeds the value of the outstanding balance on the loan facility. In this regard, BSB has a security interest in, amongst other things, the Real Property Collateral. As of October 1, 2024, the Debtor's Real

7

Property Collateral was appraised at over $40 million dollars. Even considering BSB's appraisal from 2023, the BSB Loan is significantly oversecured. Thus, analyzing this collateral alone, there are more than sufficient amounts to adequately protect BSB. BSB holds the first and only lien on the Real Property Collateral.

32. Second, BSB is additionally protected by: (i) the personal guarantees provided by Mr. Quassis and Mr. Krikor; and (ii) the UCC Collateral. These further protect BSB's security interest and adequately protect BSB.

33. Based on the security set forth above (to the extent that BSB has a valid lien in same), EWB is adequately protected. As a result, the Debtor does not believe that BSB needs further adequate protection in order to use cash collateral due to their significant oversecured position.

34. All revenues will be used in connection with a budget. As set forth in the attached budget (the "**Cash Collateral Budget**") annexed to the proposed form of Order as **Exhibit A**, the Debtor proposes only paying amounts that are absolutely necessary to maintain the Debtor's business and operations.

35. A denial of the use of alleged cash collateral to fund the Debtor's day-to-day operations will severely harm the Debtor at a critical time, effectively hindering its ability to reorganize. Essentially, without the authority to use cash collateral, the Debtor cannot continue to operate or continue construction to open, which will cause a loss of going concern value and preclude the ability to reorganize.

36. The Debtor is prepared to discuss with all of its creditors the development of both a financial and operational restructuring plan. The authority to use alleged cash collateral will

8

enable the Debtor to engage in those discussions and accomplish its reorganization, while operating in the ordinary course.

## TIMING AND NOTICES

37. The Debtor respectfully seeks a two-part hearing process.

38. First, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor seeks a preliminary hearing on the use of Cash Collateral in accordance with the Budget on less than fifteen (15) days' notice.

39. Second, the Debtor seeks a final hearing on at least fifteen (15) days' notice. At a minimum, the Debtor proposes to give notice pursuant to Bankruptcy Rule 4001(b)(1) and (3) to (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Debtor's twenty largest unsecured creditors; (iii) all secured creditors; (iv) any other parties claiming an interest in the Cash Collateral; and (v) those parties who filed a notice of appearance and request for service of pleadings in this chapter 11 case pursuant to Bankruptcy Rule 2002, if any. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

## NO PRIOR REQUEST

40. No prior application for the same or similar relief has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter an interim order, substantially in the form submitted herewith, authorizing the use of alleged cash collateral on an interim basis; (ii) enter a final order, substantially in the form submitted herewith, authorizing the use of alleged cash collateral on a final basis; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: January 30, 2025

**TRENK ISABEL SIDDIQI
& SHAHDANIAN P.C.**

*/s/ Richard D. Trenk*
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law

*Proposed Counsel to Fortress Holdings, LLC,
Chapter 11 Debtor and Debtor-in-Possession*