**TRENK ISABEL SIDDIQI**
**& SHAHDANIAN P.C.**
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.
290 W. Mt. Pleasant Ave., Suite 2370
Livingston, New Jersey 07039
Telephone: (973) 533-1000
Email: rtrenk@trenkisabel.law
Email: rroglieri@trenkisabel.law

*Counsel to Fortress Holdings, LLC,*
*Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>FORTRESS HOLDINGS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10977 (VFP)<br><br>**Hearing Date: September 18, 2026** |

**DECLARATION OF MAJID KRIKOR IN SUPPORT OF CONFIRMATION OF THE DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**MAJID KRIKOR,** of full age, pursuant to 18 U.S.C. § 1746, hereby certifies and declares as follows:

1. I am a principal of Debtor Fortress Holdings, LLC ("**Fortress**" or the "**Debtor**"), the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case. I am fully familiar with the business and affairs of the Debtor, including the facts and circumstances set forth herein.

2. I make this declaration (the "**Declaration**") in support of confirmation of the Debtor's *Third Amended Plan of Reorganization* [ECF 303] (the "**Plan**")[1] pursuant to Section

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

1129 of Title 11 of the United States Code (the "**Bankruptcy Code**"). All matters set forth in this Declaration are based on (a) my personal knowledge, (b) my review of relevant documents, including the Plan, (c) my opinion, based on my personal experience and knowledge of the Debtor's business and financial condition, or (d) as to matters involving the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, my reliance on the advice of the Debtor's bankruptcy counsel. The references to sections of the Bankruptcy Code in this Declaration have been supplied by counsel to the Debtor in order to provide the context for the statements made herein.

## I. BACKGROUND

### A. The Debtor's Business Operations

3. On January 30, 2025, (the "**Filing Date**"), the Debtor commenced its bankruptcy case by filing a voluntary chapter 11 petition under the Bankruptcy Code. [ECF 1]. Since the Filing Date, the Debtor has remained in possession of its assets and continued management of its businesses as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. A detailed description of the Debtor's business and the facts precipitating the filing of the Debtor's chapter 11 proceedings are set forth in the previously filed declaration in support of the Debtor's various "First Day Motions" [ECF 2] (the "**Qassis First Day Declaration**"). A complete description of the events leading to the filing of the Plan is set forth in the Debtor's *Third Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing Chapter 11 Plan Proposed by the Debtor-in-Possession* [ECF 222] (the "**Disclosure Statement**"). The facts set forth in the Qassis First Day Declaration and the Disclosure Statement are incorporated herein by reference.

5. The Debtor owns the real property located at: (i) 555 Preakness Avenue, Totowa, New Jersey (Lot 2, Block 6); (ii) 561 Preakness Avenue, Totowa, New Jersey (Lot 4, Block 6) ("**561 Preakness**"); and (iii) 322 - 324 Berkshire Avenue, Paterson, New Jersey (the "**Berkshire**"), which make up the restaurant and catering facility (the "**Project**").

6. The Project, which started as a single property with a 20,000 square foot office building has been substantially improved by the Debtor and now consists of a catering and restaurant facility, which is fully constructed and nearly ready for operations. The Project consists of approximately 80,000 square feet over seven (7) floors with spectacular views of New York City. The project has a full Kosher kitchen and roof top restaurant. The Project is named The Chariot.

7. Balcony Holdings, LLC ("**Balcony**"), an entity separate from the Debtor, owns a Plenary Retail Consumption Liquor License, which will be used to operate the Project. Balcony was wholly-owned by Paul Qassis but, by agreement, will be transferred by me individually. I am in the midst of going through the process to transfer ownership of the license to me individually in accordance with New Jersey law (i.e., a person-to-person transfer).

**B. The Solicitation of the Plan**

8. On July 27, 2026, the Court entered an *Order Conditionally Approving Third Amended Disclosure Statement, and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof* [ECF 305] (the "**Disclosure Statement Order**"). Pursuant to the Disclosure Statement Order, the Court conditionally approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtor's creditors and equity interest holders to make an informed judgment whether to accept or reject the Plan.

9. The Debtor served the Plan in accordance with the Disclosure Statement Order along with a ballot for voting. [ECF 306].

### C. Voting Results

10. The Court established August 20, 2024 (the "**Voting Deadline**") as the deadline for receipt of votes accepting or rejecting the Plan. The Debtor will file the *Certification of Balloting* (the "**Voting Declaration**"), which sets forth the results of voting on the Plan.

11. As set forth in the Voting Declaration, as of the Voting Deadline:

a. Class 1 is Priority Non-Tax Claims. These claims are unimpaired and not entitled to vote.

b. Class 2 Bogota Savings Bank. This claim is impaired and entitled to vote under the Plan. Bogota agreed to vote to **ACCEPT** the Plan.

c. Class 3 US Small Business Administration. This claim is impaired and entitled to vote under the Plan. The SBA did not vote on the Plan.

d. Class 4 Herc Rental Inc. This claim is impaired and entitled to vote. Herc has voted to **ACCEPT** the Plan.

e. Class 5 Samna Construction & Steel Fabrication. This claim is impaired and entitled to vote. Samna Construction did not vote on the Plan.

f. Class 6 Sherwin Williams Co. This claim is impaired and entitled to vote. Sherwin Williams did not vote on the Plan.

g. Class 7 General Unsecured Claims. These claims are impaired and entitled to vote. No General Unsecured Creditors voted on the Plan.

## II. THE PLAN SATISFIES ALL REQUIREMENTS FOR CONFIRMATION

12. As more specifically set forth below, to the best of my knowledge and belief, and having reviewed the requirements for confirmation of the Plan with the Debtor's legal advisors, I believe: (i) the Plan complies with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) of the Bankruptcy Code, including Sections 1122 and 1123, (ii) the discretionary provisions of the Plan are consistent with Section 1123(b) of the Bankruptcy Code,

(iii) the Plan complies with Sections 1129(a)(2) through 1129(a)(13) of the Bankruptcy Code, (iv) if necessary, the Plan satisfies the "cram down" requirements of Section 1129(b) of the Bankruptcy Code, and (v) the principal purpose of the Plan is not avoidance of taxes.

**A. Section 1129(a)(1) – Compliance of the Plan With Applicable Provisions of the Bankruptcy Code**

13. It is my understanding that the Plan satisfies Sections 1123(a)(1), 1122(a) and 1122(b) of the Bankruptcy Code. As required by Section 1122(a) of the Bankruptcy Code, each Class of Claims specified in the Plan contains only Claims that are substantially similar to the other Claims within that Class. Indeed, Article III of the Plan provides for the separate classification of Claims against the Debtor based on differences in the legal nature and/or priority of the Claims. Specifically, the Plan designates seven (7) Classes of Claims. Each of the Claims in each particular Class is substantially similar to the other Claims in such Class.

14. It is my understanding that the Plan also satisfies Sections 1123 of the Bankruptcy Code:

a. Section 1123(a)(1) of the Bankruptcy Code: Article III of the Plan designates each Class of Claims, other than Claims of a kind specified in Section 507(a)(2), 507(a)(3) or 507(a)(8) of the Bankruptcy Code.

b. Section 1123(a)(2) of the Bankruptcy Code: Article III of the Plan identifies each Class of Claims that is not impaired under the Plan.

c. Section 1123(a)(3) of the Bankruptcy Code: Article III of the Plan sets forth the treatment of impaired Claims.

d. Section 1123(a)(4) of the Bankruptcy Code: The Plan uniformly provides for the same treatment of each Claim in a particular Class, as the case may be, unless the Holder of a particular Claim has agreed to less favorable treatment with respect to such Claim.

e. Section 1123(a)(5) of the Bankruptcy Code: Article III of the Plan provides adequate means for the Plan's implementation including the enumeration of the means for implementation of the Plan as required by Section 1123(a)(5).

f. Section 1123(a)(6) of the Bankruptcy Code: The Plan does not provide for the issuance of non-voting equity securities. Accordingly, Section 1123(a)(6) of the Bankruptcy Code is not applicable.

g. Section 1123(a)(7) of the Bankruptcy Code: The Plan provides for all equity in the Debtor to be extinguished upon confirmation.

**B. Section 1123(b) – Discretionary Contents of the Plan**

15. It is my understanding that the discretionary provisions of the Plan comply with Section 1123(b) of the Bankruptcy Code and are not inconsistent with other applicable provisions of the Bankruptcy Code. It is my understanding that the Plan contains various provisions that may be construed as discretionary and are not required for confirmation under the Bankruptcy Code, including, among others, the impairment and unimpairment of Allowed Claims (Section 1123(b)(1)), the assumption or rejection of executory and unexpired leases (Section 1123(b)(2)), and retention of causes of action (Section 1123(b)(3)(B)).

16. The Plan contains a release, which is critical to the Debtor's ability to emerge from chapter 11.

17. Article VIII of the Plan provides for a release by the Debtor and the Debtor's estate (the "**Debtor Release**") of various claims, interests and causes of action against the Debtor (and certain of its Affiliates and Agents, including me), and the Reorganized Debtor. It is my belief that the Debtor Release under the Plan is fair and necessary under the circumstances of this chapter 11 case.

### C. <u>Sections 1129(a)(2)-1129(a)(16)—Compliance of the Debtor with the Applicable Provisions of the Bankruptcy Code</u>

18. The Plan complies fully with the remaining requirements of Section 1129(a) of the Bankruptcy Code.

#### 1. <u>Section 1129(a)(2) of the Bankruptcy Code</u>

19. It is my understanding that the Debtor, as proponent of the Plan, has satisfied all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(2) of the Bankruptcy Code, including Sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

20. It is my understanding that votes to accept or reject the Plan were solicited by the Debtor after the Court approved the adequacy of the Disclosure Statement.

21. I believe that the Debtor and its respective officers, directors, employees, advisors, attorneys and agents have solicited and tabulated votes on the Plan and have participated in the activities described in Section 1125 of the Bankruptcy Code fairly, in good faith and in a manner consistent with the applicable provisions of the Disclosure Statement, the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and all other applicable rules, laws and regulations, as I understand them. It is my understanding that such persons are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

22. I believe that the Debtor and its respective officers, directors, employees, advisors, attorneys and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, as I understand them, with regard to the offering, issuance and distribution of recoveries under the Plan.

#### 2. <u>Section 1129(a)(3) of the Bankruptcy Code – Proposal of Plan In Good Faith</u>

23. It is my understanding that the Debtor, as proponent of the Plan, has satisfied Section 1129(a)(3) of the Bankruptcy Code. Having been extensively involved with the development of the Plan, I believe that the Debtor has proposed the Plan in good faith and not by any means forbidden by law. The Debtor's good faith is evident from the facts and record of this chapter 11 case, the Disclosure Statement and the hearing thereon, and other proceedings held in this chapter 11 case, including support provided by parties in interest.

24. The Plan was proposed in good faith with the legitimate and honest purposes of maximizing the value of the Debtor and the corresponding recovery to their creditors. Indeed, the Plan is the result of the collaborative efforts of the Debtor and other material stakeholders, including Bogota Savings Bank, the primary secured creditor. The Plan is the culmination of an extensive arms' length good faith negotiation process. The Plan achieves the primary objectives of Chapter 11.

25. I further believe that the Plan represents a good faith effort to provide to the various stakeholders a recovery superior to that in a hypothetical chapter 7 liquidation, under the totality of the circumstances.

### 3. <u>**Section 1129(a)(4) of the Bankruptcy Code – Court Approval of Certain Payments as Reasonable**</u>

26. It is my understanding that the Plan satisfies Section 1129(a)(4) of the Bankruptcy Code. Pursuant to the interim compensation procedures established in this chapter 11 case, the Bankruptcy Court approved the payment of certain fees and expenses of retained professionals, subject to final review for reasonableness by the Bankruptcy Court under Section 330 of the Bankruptcy Code. Furthermore, the Plan provides that the Bankruptcy Court shall retain jurisdiction to hear and determine all fee applications. Under the terms of the Plan, the

Bankruptcy Court has jurisdiction to review any dispute with respect to the reasonableness of such fees.

4. **Section 1129(a)(5) of the Bankruptcy Code – Disclosure of Management and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

27. It is my understanding that the Plan complies with the requirements of Section 1129(a)(5) of the Bankruptcy Code. The Plan is a reorganizing plan, which extinguishes all equity interests. All equity interests in the Debtor will be extinguished on the Effective Date and equity interests in the Reorganized Debtor shall be issued on the Effective Date to the following persons in exchange for the following contributions:

(a) Paul Qassis ("**Qassis**") shall, no later than the Effective Date, (i) execute and deliver the Transition Agreement and consent to the filing of an Application with the Alcohol Beverage Commission and any other governmental entity, cooperate and diligently prosecute a transfer and assignment to the Reorganized Debtor or its nominee, all right, title and interest to the Plenary Retail Consumption License owned by Balcony as part of the Project; and (iii) extinguish any other debt owed by the Debtor to Paul Qassis to equity or any other related person or entity. The Reorganized Debtor shall not pursue any avoidance claims against Qassis as part of the foregoing agreements provided Qassis fully cooperates with the Plan and the transfer of the Debtor, Balcony, Golden Sky and the Liquor License as provided for herein. Qassis shall have no direct or indirect monetary claim, lien or interest personally or through any entity against the Reorganized Debtor, Balcony and Golden Sky. Qassis, as seller, and Issa and myself as purchasers, have entered into a Purchase Sale and Surrender Agreement (**Exhibit D** to the Plan) whereby Qassis shall sell all of his right, title and interest in the Debtor, Balcony and Golden Sky for $2 million. For the avoidance of doubt, any nominee, transferee, or assignee of the Liquor License, which shall be a New Jersey corporate entity shall be a co-borrower of the secured obligations owing to BSB and shall be required to convey a security interest and stock pledge in accordance with this Plan.

(b) I will receive an interest in the Reorganized Debtor in exchange of (i) extinguishment of all DIP Loans owed to MGAC Investments; and (ii) extinguishment of his pre-petition indebtedness in the amount of approximately $5 million. As a result of Confirmation of the Plan, MGAC Investments and I shall have no direct or indirect monetary claim or lien personally or through any entity against the Reorganized Debtor, Balcony or Golden Sky or their assets including the Liquor License.

(c) The Plan anticipates that Abdallah Issa shall receive 50% of the Reorganized Debtor in exchange of (i) extinguishment of the Second DIP Loan and waiver of any

rights to repayment of the Additional Advances and (ii) subordination of his pre-petition indebtedness of approximately $2.37 million. As a result of Confirmation of the Plan, Abdullah Issa shall have no direct or indirect monetary claim or lien personally or through any entity against the Reorganized Debtor, Balcony or Golden Sky, or their assets including the Liquor License.

(d) In addition to the DIP Loans, MGAC, Issa, and I have advanced, directly or indirectly, additional monies for adequate protection payments to BSB and otherwise to maintain the Chapter 11 case subject to a reservation to seek court approval of said advances ("**Additional Advances**").

(e) I have executed the stock and security liquidation necessary to deposit $2.5 million into the attorney trust account of Trenk Isabel Siddiqi & Shahdanian P.C. which funds shall be used to make an initial payment to BSB in the amount of $2 million to satisfy projected administrative claims of approximately $500,000. It is my understanding that these funds will be available by the close of business on September 15, 2026.

5. **Section 1129(a)(6) of the Bankruptcy Code – Approval of Rate Changes**

28. It is my understanding that the Plan does not provide for any rate change that requires regulatory approval. Therefore, Section 1129(a)(6) of the Bankruptcy Code is not applicable.

6. **Section 1129(a)(7) of the Bankruptcy Code – Best Interests of Creditors Test**

29. It is my understanding that Section 1129(a)(7) of the Bankruptcy Code has been satisfied. The Debtor prepared a chapter 7 liquidation analysis attached to the Disclosure Statement [ECF 302] (the "**Liquidation Analysis**") and an estimate of the amount available for distribution to holders of allowed claims pursuant to the Plan. The Liquidation Analysis was prepared by the Debtor's accountant, Vestcorp, LLC, in conjunction with the Debtor's finance department. Based on my review of the Liquidation Analysis, I believe that the Liquidation Analysis: (a) is reasonable as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions in light of the purpose for which it was prepared; (c) has not been controverted by other evidence; and (d)

establishes that distributions for holders in every impaired Class under the Plan on account of Allowed Claims will receive a value equal to or greater than the amount such holder would be entitled to receive if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

30. Therefore, the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

### 7. **Section 1129(a)(8) of the Bankruptcy Code – Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

31. It is my understanding that Section 1129(a)(8) of the Bankruptcy Code has been satisfied. Based on my review, Class 1 is unimpaired and is deemed to have accepted the Plan. Classes 2 and 4 have voted to accept the Plan. Classes 3, 5, 6 and 7 did not vote on the Plan.

32. As each impaired class has either accepted or failed to vote on the Plan, it is my understanding that Section 1129(a)(8) has been fulfilled. Due to the fact that Classes 3, 5, 6 and 7 failed to vote on the Plan, to the extent necessary, I understand that the Debtor may seek confirmation under Section 1129(b), rather than Section 1129(a)(8), of the Bankruptcy Code. I believe, for the reasons set forth below, that the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 3, 5, 6 and 7 and therefore, satisfies the requirements of Section 1129(b) of the Bankruptcy Code with respect to Classes 3, 5, 6 and 7. It is my understanding, therefore, that the Plan is confirmable.

### 8. **Section 1129(a)(9) of the Bankruptcy Code – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

33. It is my understanding that the Plan satisfies Section 1129(a)(9) of the Bankruptcy Code. Based on my review of Article III of the Plan, the Plan provides for the treatment of

Administrative Expense Claims, Priority Tax Claims, Professional Compensation Claims, and other Claims entitled to priority under Sections 507(a)(1)-(8) of the Bankruptcy Code, as applicable, in the manner required by Section 1129(a)(9) of the Bankruptcy Code. Therefore, the Plan complies with Section 1129(a)(9) of the Bankruptcy Code.

### 9. **Section 1129(a)(10) of the Bankruptcy Code – Acceptance by At Least One Impaired Class**

34. Based on my review of the Voting Declaration and my knowledge of the solicitation process, I understand that at least one impaired Class of Claims for the Debtor has accepted the Plan. Accordingly, the Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

### 10. **Section 1129(a)(11) of the Bankruptcy Code – Feasibility of the Plan**

35. It is my understanding that Section 1129(a)(11) of the Bankruptcy Code has been satisfied. The Debtor believes that the Plan meets the feasibility requirements under the Bankruptcy Code based upon the projections submitted.

36. Therefore, I believe the Plan is feasible within the meaning of Section 1129(a)(11) of the Bankruptcy Code.

### 11. **Section 1129(a)(12) of the Bankruptcy Code – Payment of All Fees**

37. It is my understanding that the Plan satisfies Section 1129(a)(12) of the Bankruptcy Code. Article II(C)(1) of the Plan provides for payment of fees payable pursuant to Section 1930(a)(6) of title 28 of the United States Code with respect to the Debtor, on or before the Effective Date. The Debtor has adequate means to pay all such fees. Accordingly, the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

12. **Section 1129(a)(13) of the Bankruptcy Code – Payment of Retiree Benefits**

38. The Debtor has no obligation to pay "retiree benefits" within the meaning of Section 1114 of the Bankruptcy Code on or before the Filing Date. Accordingly, Section 1129(a)(13) of the Bankruptcy Code is not applicable.

13. **Section 1129(a)(14) of the Bankruptcy Code – Domestic Support Obligation**

39. The Debtor is not required to pay any domestic support obligations. Accordingly, Section 1129(a)(14) of the Bankruptcy Code is not applicable.

14. **Section 1129(a)(15) of the Bankruptcy Code – Individual**

40. The Debtor is not an individual. Accordingly, Section 1129(a)(15) of the Bankruptcy Code is not applicable.

15. **Section 1129(a)(16) of the Bankruptcy Code – Transfers of Property Under Plan**

41. It is my understanding that Section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business or commercial corporation or trust be made in accordance with applicable provisions of non-bankruptcy law. It is my understanding that all of the property begin transferred under the Plan is being made in accordance with applicable provisions of non-bankruptcy law. Accordingly, I believe that the Debtor has satisfied this provision.

D. **The Plan Satisfies the "Cram Down" Requirements under Section 1129(b) of the Bankruptcy Code.**

42. It is my understanding that Section 1129(b) of the Bankruptcy Code has been satisfied. I understand that this section of the Bankruptcy Code provides that if a chapter 11 plan satisfies all applicable requirements of Section 1129(a) other than the requirement under Section

1129(a)(8) that all impaired classes accept the plan, the plan may be confirmed so long as it does not discriminate unfairly and it is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.

43. Notwithstanding the fact that Classes 3, 5, 6 and 7 are impaired Classes that failed to vote on the Plan, the Plan may still be confirmed under Section 1129(b) of the Bankruptcy Code because the Plan: (i) does not discriminate unfairly, and (ii) is fair and equitable as to Classes 3 and 4.

44. Classes 3 and 5 include secured claims against the Debtor. On this basis, I believe there is a reasonable basis for separately classifying the holders of Claims in Classes 3 and 5. These classes are not unfairly discriminated against as each class has its claim fixed and is provided similar treatment for their claim. Each class will have its claim satisfied in full through the Plan. In addition, Class 6 is no longer a secured claim by virtue of the default entered against it in Adv. Pro. No. 25-1034 (VFP). Class 7 includes all general unsecured claims. Accordingly, the Plan does not discriminate unfairly.

45. Moreover, the Plan is fair and equitable with respect to each class of claims or interest that is impaired under and has not accepted the Plan. Through the Plan, each Claim of Classes 3 and 5 will be paid in full over the term of the Plan. Therefore, the Plan satisfies Section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code. Pursuant to the Plan, all equity interests are being extinguished in the Debtor. Accordingly, equity interests will not receive payment in full before lesser interests (i.e. unsecured creditors) may share in the assets of the Debtor. Therefore, the Plan satisfies Section 1129(b)(2)(B)(ii) of the Bankruptcy Code.

46. Thus, the Plan is fair and equitable.

**E. <u>The Principal Purpose of the Plan Is Not Tax Avoidance Under Section 1129(d) of the Bankruptcy Code</u>**

47. I believe that the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code. Although implementation of the Plan may avoid adverse tax consequences that may otherwise arise from the transactions contemplated by the Plan, based on my review of the Plan and my knowledge of the Debtor, the principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of Section 5 of the Securities Act of 1933. Moreover, no governmental unit, or any other party, has thus far raised any objection to the Plan on these grounds, and the Debtor does not anticipate any such objections will be filed.

48. The Plan, therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

Dated: September 11, 2026

**MAJID KRIKOR**